UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-CV-00228-FDW

| | |
|---|---|
| CATHERINE J. KENNEDY, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ANDREW M. SAUL, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

THIS MATTER is before the Court on Claimant Catherine J. Kennedy's Motion for Summary Judgement (Doc. No. 14), filed September 30, 2019, and Defendant Commissioner of Social Security Andrew M. Saul's ("Commissioner") Motion for Summary Judgement (Doc. No. 18), filed December 30, 2019. Kennedy on appeal seeks judicial review of an administrative law judge's unfavorable decision on her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, Kennedy's Motion for Summary Judgement is DENIED; the Commissioner's Motion for Summary Judgement is GRANTED; and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

Kennedy filed an application for Title II DIB on August 10, 2011. (Tr. 197). Kennedy initially alleged disability beginning April 23, 2009. (Tr. 197). After her application was denied initially and upon reconsideration, Kennedy requested a hearing. (Tr. 129, 133, 147). Following a hearing on October 21, 2013, at which Kennedy amended her disability's alleged onset date to

1

November 17, 2011, the ALJ issued an unfavorable decision. (Tr. 17, 34, 44). Kennedy's subsequent request for review by the Appeals Council was denied. (Tr. 1). On October 21, 2014, Kennedy submitted a subsequent claim for Title II DIB. (Tr. 1607). On March 8, 2016, this Court remanded the ALJ's initial decision, and on June 21, 2016, the Appeals Council remanded the case back to the Commissioner of Social Security for further proceedings. (Tr. 1595-1603, 1607). Additionally, the Appeals Council the initial 2011 claim with the subsequent 2014 claim as the subsequent claim was a duplicate. (Tr. 1607).

The ALJ found Kennedy met the insured status requirements through March 31, 2015, and Kennedy has not engaged in substantial gainful activity since the amended alleged onset date of November 17, 2011. (Tr. 1506). The ALJ found Kennedy had the following severe impairments: "lumbar and cervical spine degenerative disc disease; status post ACDF; a history of diabetes mellitus; degenerative joint disease of the knees; bilateral shoulder impingement; asthma; post traumatic stress disorder; depression; and anxiety[.]" (Tr. 1506). The ALJ then found Kennedy did not have an impairment or combination of impairments meeting or medically equal to the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, App. 1. (Tr. 1514). The ALJ then determined Kennedy had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b):

> [E]xcept no climbing ladders; occasional stooping, kneeling, crouching, and crawling; frequent but not constant overhead reaching with the upper extremities; avoid concentrated exposure to extreme cold, fumes, and hazards (heights); simple, routine, repetitive tasks, in a stable environment at a non production pace with occasional interpersonal interaction and occasional public contact; off task 9% of an 8-hour workday; and concentration is greater that two hours during an 8-hour workday.

(Tr. 1516). The vocational expert ("VE") then testified that in consideration of Kennedy's limitations and RFC for light work with additional restrictions, Kennedy cannot perform any past relevant work. (Tr. 1523). However, the VE testified that considering Kennedy's age, education, work experience, and RFC, Kennedy would be able to perform jobs that exist in significant numbers in the national economy, including storage facility rental clerk (a Level 3 job), mail post non post office (a level 3 job), and checker I (a Level 2 job). (Tr. 1524). Considering this, the ALJ concluded Kennedy was not disabled according to the Social Security Act, from April 23, 2009, through the date of the ALJ's decision. (Tr. 1525).

Kennedy is now seeking review of the ALJ's final decision in this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Kennedy argues the ALJ's final decision is not supported by substantial evidence for two reasons. First, the ALJ failed to identify and resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. No.15 at 6). Second, in determining Kennedy's RFC, the ALJ failed to account for all the limitations resulting from her impairment and explain the findings. (Doc. No.15 at 6).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides this Court with the authority to review the final decision of the Commissioner's in Social Security cases. 42 U.S.C. § 405(g). The Court is limited to considering if the ALJ applied the correct legal standard and if the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A reviewing court must neither weigh evidence, nor can it make any factual findings as those duties lie with the ALJ. Hays, 907 F.2d at 1456.

The Supreme Court has defined substantial evidence in this context to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson, 402 U.S. at 401). "Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A court will only consider whether the ALJ's decision was supported by substantial evidence. It will not re-weigh conflicting evidence or substitute its own judgement on the evidence for that of the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). The ALJ uses a five-step process in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ asks whether the claimant: (1) is performing any substantial gainful activity; (2) had a severe physical or mental medical impairment; (3) had an impairment that met or equaled a listed impairment; (4) could return to her past relevant work; and (5) if not, could the claimant perform any other work in significant numbers in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 861−62 (4th Cir. 2017). "The claimant bears the burden to make the requisite showing during the first four steps . . . If the claimant does meet her burden of proof, the burden then shifts to the Commissioner at step five." Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179−80 (4th Cir. 2016).

In the case where the claimant fails to prove the presence of a listed disability for the purposes of step three, the ALJ must then determine the claimant's RFC before moving to step

4

four. Lewis, 858 F.3d at 861–62. "Your [RFC] is the most you can still do despite your limitations."

20 C.F.R. § 416.945(a)(1). The Fourth Circuit explained in Lewis how the ALJ will determine the

RFC prior to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Once at step four, the claimant must show that, given the RFC, the claimant is unable

perform his or her past work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). If the claimant

meets this burden, the ALJ proceeds to step five, where the burden shifts to the Commissioner. Id.

> At step five, the burden shifts to the Commissioner to prove by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's residual functional capacity, age, education, and work experience. [20 C.F.R.] §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429. The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates

5

the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the
claimant not disabled and denies the application for benefits.

Id.

## III. ANALYSIS

A. VE Testimony Conflict

Kennedy presents two issues on appeal. First, Kennedy argues the ALJ failed to identify and resolve an apparent conflict between the VE's testimony and the DOT. (Doc. 15 at 6). Specifically, Kennedy argues a limitation to simple, routine, repetitive tasks ("SRRT") in a stable environment conflicts with the reasoning requirements of the jobs the VE presented to the ALJ because those jobs "require an ability to understand and carryout detailed instructions (level two reasoning) and to deal with problems involving several concrete variables (level three reasoning). (Doc. No. 15 at 10). In arguing her case, Kennedy relies on Henderson and Thomas, where the 4th Circuit held that there was an apparent conflict between RFCs limitations on *instructions* and reasoning level 2 jobs. (Doc. No. 15 at 10-11); Henderson v. Colvin, 643 Fed. App'x 273, 277 (4th Cir. 2016); Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019). Kennedy also relies on several District Court decisions in this circuit that similarly equate limitations in *tasks* with limitations in *instructions*. (Doc. No. 15 at 11-12). In sum, Kennedy's argument relies upon the precedent that there is no significant distinction between simple *tasks* and simple *instructions*. (Doc. No. 15 at 15). Thus, because a conflict does exist between jobs with level 2 reasoning abilities and RFC limitations on simple *instructions*, a conflict also exists between jobs with level 2 reasoning and simple, routine, and repetitive *tasks*. (See Doc. 15 at 15).

The ALJ is required to identify any conflict between the VE's testimony and the DOT. Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015). If a VE's testimony appears to conflict with

6

the DOT, an ALJ's decision will only be supported by substantial evidence if the ALJ has received [an] explanation from the [VE] and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]. Id. At 209-10. Additionally, the 4th Circuit held in Lawrence that no apparent conflict between an RFC for SRRT and reasoning level 2 jobs. Lawrence v. Saul, 941 F.3d 140, 141 (4th Cir. 2019). In Lawrence, the claimant made the same argument as Kennedy, relying on Thomas to argue that there is no meaningful difference between an RFC for jobs involving SSRT and an RFC for jobs involving short, simple instructions. Id. at 143. However, the 4th Circuit determined that the reasoning in Thomas relies on the distinction between "short" instructions and jobs requiring "detailed but uninvolved" instructions. Id.. Therefore, the 4th Circuit rejected the proposition that Thomas's reasoning can be applied to RFCs for SRRT and acknowledged that there is no apparent conflict between "simple, routine, and repetitive" tasks or work and jobs with level 2 reasoning. Id. at 144 n. 8.

Kennedy received a RFC for SRRT, and the VE determined Kennedy could perform jobs with reasoning level 2 or reasoning level 3. (Tr. 1516, 1524). However, Kennedy has presented the same argument seen by the claimant in Lawrence: Because there is no meaningful difference between simple *instructions* and simple *tasks*, there must be an apparent conflict between the VE's testimony and the DOT. (Doc. No. 15 at 15). Each case Kennedy provides to support this argument is predicated on the requirement that there be no meaningful difference between SRRT and simple instructions. Indeed, in Kennedy's own words:

> And a limitation to simple, routine, and repetitive tasks is no less restrictive than a limitation to short, simple instructions. Since there is no meaningful distinction between simple instructions and simple tasks, an apparent conflict exists between Kennedy's RFC and the jobs the ALJ says she can perform. It stands to reason that if there is a conflict between the limitation to simple, routine, and repetitive tasks

7

and a job requiring a reasoning level of two, a conflict would also exist between
that RFC and a job requiring a greater reasoning level of three.

(Doc. No. 15 at 15) (citations omitted). Thus, Kennedy's exact argument was addressed by the Fourth circuit in Lawrence and found to be without merit. Lawrence, 941 F.3d at 143−44. Kennedy presents no other argument supporting this first assignment of error, either in the memorandum or the opposition memorandum. (See Doc. No. 15; 21). Accordingly, Kennedy's first argument presents no basis for reversal or remand of the ALJ's final decision.

B. RFC Determination

Kennedy next argues the ALJ failed to account for all the limitations resulting from her impairment and explain the findings. (Doc. No. 15 at 6). Specifically, Kennedy argues the ALJ failed to account for her moderate limitation in concentrating, persistence, and maintaining pace ("CPP") in the RFC or explain why the moderate limitation would not restrict Kennedy further. (Doc. No. 15 at 18-19). The Commissioner disagrees and summarizes the ALJ's decision and the ALJ's evidence. (Doc. No. 19 at 10-23).

Kennedy largely relies on the rulings from Mascio to support her claim. (See Doc. No. 15 at 17-22). Mascio explains, "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636. Additionally, Mascio held that in order to account for a claimant's CPP, the ALJ cannot restrict its hypothetical question to simple, routine tasks or unskilled work. Id. at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). The ALJ must put some limitation on a claimant's ability to stay on task when the claimant has a CPP limitation. Id. This means a limitation to SRRT must be accompanied by some limitation to account for a moderate

8

limitation in CPP, such as non-production or non-assembly line pace limitations. See Allen v. Berryhill, No. 3:16-CV-00851-RJC, 2018 WL 1175231, at *4−5 (W.D.N.C. Mar. 6, 2018) (discussing cases, holding "non-production or non-assembly line pace limitations sufficiently account for a claimants' moderate limitation in CPP" absent evidentiary showing by claimant that greater restriction is required).

Further, Mascio does not create a per se rule that a limitation to SRRT for a claimant with a moderate limitation in CPP in reversible. Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) ("But we did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC."). The ALJ can explain the rationale behind how he or she accounts for a claimant's limitations, thus allowing an ALJ to give a claimant an SRRT limitation without adding more restrictions to the claimant. Id. at 121−22. Therefore, the ALJ can find that an SRRT limitation is enough of a mental limitation for a claimant if it provides the rationale and explanation behind the decision. Id.

Here, the ALJ's decision is supported by substantial evidence. The ALJ determined Kennedy has a moderate CPP limitation. (Tr. 1515). Pursuant to Mascio, the ALJ did not limit the RFC to SRRT. See Mascio, 780 F.3d at 638. Instead, the ALJ determined Kennedy could perform SRRT "at a non production pace with occasional interpersonal interaction and occasional public contact[.]" (Tr. 1516). Such a limitation directly addresses Kennedy's ability to stay on task, as required by Mascio when a claimant has a CPP limitation. Mascio, 780 F.3d at 638.

9

Notwithstanding this limitation, the ALJ still provides a logical explanation for Kennedy's RFC. The ALJ explained he relied on testimony from State Agency Medical and Psychological Consultants ("Consultants"), Ms. Rodgers (Claimant's nurse practitioner), Dr. Barkenbus (Claimant's neuropsychiatrist), Dr. Welshofer (Claimant's neurosurgeon) and Dr. Sworowski (Claimant's neuropsychologist). (Tr. 1522-1523). The ALJ specifically explained he did not find Kennedy's own subjective evidence that Claimant was unable to work persuasive. (Tr. 1523). Indeed, the ALJ explained:

> The undersigned has given little weight to Dr. Barkenbus' and Ms. Rodgers' opinion, as noted above, it is conclusory and inconsistent with iother evidence in the record, including some of their own statements. The undersigned [gave] significant weight to Dr. Welshofer's opinion and although it was made prior to the alleged onset date, the evidence does not show worsening impairments and she underwent relatively successful treatment for her other impairments. The undersigned has given significant weight to Dr. Sworowski's opinion regarding the validity of the claimant's allegations of her symptoms and limitations.

(Tr. 1523). Dr. Sworowski testified Kennedy "would likely benefit from allowing herself extra time to complete multistep tasks and performing such tasks in an environment in which distractions are minimized." (Tr. 1515). The ALJ also gave the Consultants' conclusions considerable but not controlling weight. (Tr. 1522). The ALJ relied upon the Consultants' testimony:

> [Consultants] further concluded that the claimant would be able to understand and remember simple instructions, maintain attention and concentration for two hours in an 8-hour day, perform simple tasks, accept instructions from supervisors and interact appropriately with the public and coworkers in settings with limited interpersonal demands, and work in a stable environment.

(Tr. 1522). The ALJ properly relied on the testimony provided by Dr. Soworowski and the Consultants, and those testimonies constitute substantial evidence.

Given these reasons, the ALJ's RFC determination is supported by substantial evidence. Therefore, Kennedy has not presented any basis for reversal or remand.

10

## IV. CONCLUSION

For these reasons, Kennedy's Motion for Summary Judgement (Doc. No. 14) is DENIED; the Commissioner's Motion for Summary Judgement (Doc. No. 18) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: July 24, 2020

Frank D. Whitney
United States District Judge

11